1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    ETELBINA CACERES-MARCHAN,
                                                NO:  1:16-CV-3036-RMP
8                          Plaintiff,
                                                ORDER REMANDING FOR
9          v.                                   FURTHER PROCEEDINGS

     Commissioner of Social Security,
10
                           Defendant.
11

12         BEFORE THE COURT are Plaintiff Etelbina Cacares-Marchan's Motion

13   for Summary Judgment, ECF No. 16, and Defendant Commissioner of Social

14   Security's Cross-Motion for Summary Judgment, ECF No. 21.  The Court has

15   reviewed the pleadings, the administrative record, and is fully informed.

16                               BACKGROUND

17         Plaintiff filed a Title II application for disability benefits and a Title XVI

18   application for supplemental security income on June 8, 2012.  *See* ECF No. 9-2,

19   Tr. 22.  Plaintiff alleged an onset of disability of April 24, 2012.  *Id.*  The claims

20   were initially denied on October 26, 2012, and upon reconsideration on January 29,

21   2013.  *Id.*  Plaintiff was granted a hearing on June 9, 2014, before an

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 1

1    Administrative Law Judge ("ALJ").  The ALJ heard testimony from Plaintiff and

2    Vocational Expert ("VE") Kimberly Mullinax.  *Id*.

3         The ALJ found that Plaintiff had not engaged in substantial gainful activity

4    since April 24, 2012.  *Id*. at 24.  He further determined that Plaintiff has the

5    following six "severe" impairments: degenerative disk disease of the lumbar spine

6    (status/post fusion), hiatal hernia, obesity (status/post gastric bypass), bipolar

7    disorder, post-traumatic stress disorder, and personality disorder not otherwise

8    specified.  *Id*.  However, the ALJ found that these impairments did not meet or

9    equal any listed impairments.  *Id*. at 25.  Accordingly, the ALJ determined that

10   Plaintiff had the residual functional capacity ("RFC") to perform "light work" as

11   defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations:

> she cannot crawl or climb ladders, ropes, scaffolding, ramps, or stairs.
> She can occasionally balance, stoop, kneel, or crouch.  She should avoid
> concentrated exposure to vibration or hazards.  She can perform simple
> and routine tasks and can follow short and simple instructions.  She can
> perform work that needs little or no judgment and can perform simple
> duties that can be learned on the job in a short period.  She can perform
> sustained work activities (i.e. can maintain attention and concentration;
> persistence and pace) in an ordinary work setting on a regular and
> continuing basis (i.e., eight hours per day, five days per week, or an
> equivalent work schedule) within customary tolerances of employers'
> rules regarding sick leave and absence.    She requires a work
> environment with minimal supervisor contact. [footnote omitted]  She
> needs a work environment without public contact and with no more that
> [sic] superficial interactions with coworkers.    She can work in
> proximity to coworkers, but not in a cooperative or team effect.  She
> requires a work environment that is predictable and with few work
> setting changes (i.e., a few routine and uninvolved tasks according to
> set procedures, sequences, or pace, with little opportunity for diversion
> or interruption).

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 2

1    *Id.* at 28.

2         Although the ALJ found that Plaintiff could not perform past relevant work,

3    he determined that "[t]ransferability of job skills is not material to the

4    determination of disability because using the Medical-Vocational Rules as a

5    framework supports a finding that the claimant is 'not disabled,' whether or not the

6    claimant has transferable job skills." *Id.* at 38 (citations omitted).  Therefore, the

7    ALJ determined that Plaintiff was not under a disability as defined by the Social

8    Security Act, and denied her applications for benefits.

9                              STATEMENT OF FACTS

10        The facts of this case are set forth in the administrative hearing transcripts

11   and record, ECF No. 9.  Plaintiff was thirty-two years old at the time of her alleged

12   onset of disability, ECF No. 9-2, Tr. 38, and thirty-four years old at the time of her

13   hearing in front of the ALJ, *id.* at 53.  Plaintiff had past relevant work as a machine

14   packager, a fruit farm worker II, an industrial cleaner, a material handler, a yarn

15   winder, a boat patcher, a fast food worker, an amusement park worker, a

16   cleaner/housekeeper, and a sales representative.  *See id.* at 38.

17                              STANDARD OF REVIEW

18        Congress has provided a limited scope of judicial review of a Commissioner's

19   final decision.  42 U.S.C. § 405(g).  A reviewing court must uphold the

20   Commissioner's decision, determined by an ALJ, when the decision is supported by

21   substantial evidence and not based on legal error.  *See Jones v. Heckler*, 760 F.2d

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 3

993, 995 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence."  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the Commissioner's decision.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986) ("This court must consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion.").  "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the reviewing court may not substitute its judgment for that of the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Thus, if there is substantial evidence to support the administrative findings, or if there is

conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

SEQUENTIAL PROCESS

Under the Social Security Act (the "Act"),

> an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). "Thus, the definition of disability consists of both medical and vocational components." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).

1    If the claimant is not engaged in substantial gainful activities, the ALJ, under

2    step two, determines whether the claimant has a medically severe impairment or

3    combination of impairments.  If the claimant does not have a severe impairment or

4    combination of impairments, the disability claim is denied.  20 C.F.R.

5    §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).

6    If the impairment is severe, the evaluation proceeds to step three, which

7    compares the claimant's impairment to a number of listed impairments

8    acknowledged by the Commissioner to be so severe as to preclude substantial

9    gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also*

10   20 C.F.R. §§ 404, Subpt. P, App. 1 and 416, Subt. I, App. 1.  If the impairment

11   meets or equals one of the listed impairments, the claimant is conclusively

12   presumed to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

13   Before proceeding to step four, the claimant's residual functional capacity is

14   assessed.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a).  An individual's residual

15   functional capacity is the ability to do physical and mental work activities on a

16   sustained basis despite limitations from any impairments.  20 C.F.R.

17   §§ 404.1545(a)(1) and 416.945(a).

18   If the impairment is not one conclusively presumed to be disabling, the

19   evaluation proceeds to step four, where the ALJ determines whether the

20   impairment prevents the claimant from performing work she has performed in the

21

past.  If the claimant is able to perform her previous work, the claimant is not

disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

If the claimant cannot perform her previous work, the final step considers

whether the claimant is able to perform other work in the national economy in

view of her residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

At step five, the initial burden of proof rests upon the claimant to establish a

prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d

920, 921 (9th Cir. 1971).  The claimant satisfies this burden by establishing that a

physical or mental impairment prevents her from engaging in her previous

occupation.  The burden then shifts to the Commissioner to show that (1) the

claimant can perform other substantial gainful activity, and (2) a "significant

number of jobs exist in the national economy" which the claimant can perform.

*Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  The Commissioner must

consider the claimant's residual functional capacity, age, education, and work

experience to determine if that claimant could adjust to other work.  20 C.F.R. §§

404.1520(a)(4)(v) and 416.920(a)(4)(v).

ISSUES

Plaintiff raises three issues regarding the ALJ's determination:

1.  Did the ALJ commit harmful, reversible legal error in rejecting the
opinions of Ms. Monique Rogers and Dr. Matthew Johnson and in
giving greatest weight to non-examining reviewers Drs. Winslow and
Borton?

2.    Did the ALJ commit harmful, reversible legal error by not considering the entirety of the objective medical evidence, and did this failure result in an erroneous Residual Functional Capacity assessment?
3. Did the ALJ commit harmful, reversible legal error in discounting Ms. Caceres-Marchan's credibility on the basis of her activities of daily living and her attempts to work?

ECF No. 16 at 8-9.

The Court addresses Plaintiff's claims in order of their importance to the Court's analysis, which differs from how they were presented by the parties.

## I. Rejection of Medical Opinions

As part of the disability determination, the ALJ must consider the opinions of the claimant's medical providers.  20 C.F.R. §§ 404.1527(b) and 416.927(b).  An ALJ may consider the opinions of three types of physicians: treating, examining, and non-examining.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (2014).  The ALJ must give the greatest weight to testimony offered by a treating physician.  *Id.*  Factors that may be considered in weighing the evidentiary value of a medical opinion include: (1) the type of doctor; (2) the amount of relevant evidence in support of the opinion; (3) consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other factors deemed relevant.  20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6).

Where a treating physician's opinion is uncontroverted, the ALJ must find "clear and convincing" reasons to reject that opinion.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (1996); *see also Garrison*, 759 F.3d at 1012 (same standard for rejecting the opinions of examining physicians).  However, "specific and

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 8

1    legitimate" reasons are sufficient to reject a controverted opinion when supported

2    by substantial evidence for doing so. *But see Lester v. Chater*, 81 F.3d 821, 830–

3    31 (9th Cir. 1995) ("The opinion of a nonexamining physician cannot by itself

4    constitute substantial evidence that justifies the rejection of the opinion of either an

5    examining physician *or* a treating physician."). To support a decision with

6    substantial evidence, an ALJ must provide a "detailed and thorough summary of

7    the facts and conflicting clinical evidence, stating [the] interpretation thereof, and

8    making findings." *Garrison*, 759 F.3d at 1012 (citing *Reddick v. Chater*, 157 F.3d

9    715, 725 (9th Cir. 1998)).

10    An ALJ commits error if the ALJ rejects a medical opinion "without

11    explanation that another medical opinion is more persuasive or criticizing with

12    boilerplate language that fails to offer a substantive basis" for the rejection. *Id.* at

13    1012-13.

14    **A. Dr. Matthew Johnson**

15    Dr. Johnson treated Plaintiff as her primary care provider since 2009, *see*

16    ECF No. 9-8, Tr. 898; therefore, he is a treating medical provider. After having

17    seen Plaintiff over the course of years, as documented throughout the

18    administrative record, Dr. Johnson submitted medical reports for the ALJ to

19    consider. *See e.g.*, ECF No. 9-7, Tr. 606-07; ECF No. 9-8, Tr. 898-99, and 950-51.

20    In February of 2013, Dr. Johnson opined that Plaintiff would need to lie down

21    during the day, that work would cause her condition to deteriorate, and that she

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 9

could be expected to miss an average of four or more days per month of work due

to pain that would be most severe at the end of an eight-hour day. *Id*. at 898-99.

On both October 14, 2013, and May 14, 2014, Dr. Johnson's opinion was similar

and he added that Plaintiff experienced an inability to focus/concentrate, *id*. at 606-

07, and suffered from fatigue "from pain and bipolar meds." *Id*. at 950-51.

Despite Dr. Johnson's extensive history with Plaintiff, the ALJ rejected his

opinion by stating that he gave:

> minimal to no weight to these latter opinions from Dr. Johnson. As his
> basis for these opinions, Dr. Johnson asserted that the claimant had
> fatigue, back pain, and an inability to focus or concentrate. He asserted
> that her limitations were due to chronic pain and bipolar disorder (28F).
> However, Dr. Johnson's treatment records after March 2013
> consistently noted that the claimant displayed normal memory, normal
> mood and affect, and normal ambulation. These treatment records do
> not refer to fatigue. His examinations did not otherwise note positive
> signs of physical impairment. When seeking care for back pain in
> August 2013, the claimant displayed intact sensation and steady gait.
> At this time, she stated that her back pain had been ongoing for three
> weeks. Her current medications only consisted of psychiatric
> medications. She was given pain medication and muscle relaxers. Her
> symptoms improved with this medication.

*Id*. at 35. (citations omitted).

The ALJ's justifications are neither valid nor legitimate reasons to discount

the medical opinion of this treating source. Normal memory, mood, affect,

ambulation, sensation, and gait do not preclude the experience of severe, limiting

pain that would be consistent with Dr. Johnson's conclusions. Furthermore, the

ALJ's reference to a medical appointment in August of 2013 is confusing as the

documentation he cites supports Dr. Johnson's conclusions (although the ALJ's

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 10

1   cursory discussion omits important details).  *See* ECF No. 9-8, Tr. 703-08.  As the

2   ALJ selectively cited five pages within the middle of a 152-page document, a

3   review of those selected pages demonstrates that Plaintiff was seen regarding her

4   back pain, and that her pain was severe enough that the clinic tried three different

5   pain medications before finally obtaining a response with Hydrocodone-

6   Acetaminophen.  *See id.*  Dr. Johnson's reports that summarize his opinions do not

7   conflict with his clinical notes simply because they not include the word "fatigue"

8   or that Plaintiff's pain was not apparent in every one of her physical symptoms

9   annotated in the record.

10          In a vague, conclusory manner, the ALJ stated that "Dr. Johnson's assertion

11   of frequent rest breaks and frequent absences are [sic] otherwise inconsistent with

12   the claimant's activities following her spinal surgery in February 2013, which are

13   discussed in detail earlier in this decision."  ECF No. 9-2, Tr. 35.  The Court is

14   unable to determine what activities the ALJ relies upon, but nonetheless, his

15   discussion of aforementioned "activities" fails to serve as a specific and legitimate

16   basis that would support his rejection of Dr. Johnson's medical opinion.  The ALJ

17   could be referencing his discussion of Plaintiff's work history prior to the alleged

18   onset of her disability, his repeated citation to characteristics like "appropriate

19   grooming," *id.* at 32; the position Plaintiff was fired from at JC Penney, *id.*;

20   Plaintiff's alleged ability to complete household chores, *id.*; or the fact that in

21   September 2012, Plaintiff was "vising [sic] parks, and taking walks with her

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 11

1    daughters," *id*.; but none of these facts undercuts Dr. Johnson's opinion regarding

2    Plaintiff's ability to work in a full-time, long-term employment setting.  The ALJ

3    was obligated to support his decision with specific citations to evidence, not to

4    broadly cite back to earlier parts of his own decision.

5          The parties dispute whether the Court should apply the heightened standard

6    requiring "clear and convincing" reasons to discount Dr. Johnson's opinion as

7    Plaintiff argues that Dr. Johnson's opinion is not contradicted.  However, the Court

8    need not determine whether or not the opinion is adequately controverted to invoke

9    the heightened standard because the ALJ's rejection of Dr. Johnson's medical

10    opinions is unsupported by "specific and legitimate reasons," and therefore, it fails

11    to meet the lower threshold for controverted opinions.

12          The ALJ's inadequate analysis and rejection of Dr. Johnson's opinions is

13    sufficient to remand this case for further proceedings, but for the benefit of the

14    parties on remand, the Court will address some of Plaintiff's other contentions.

15    **B.  Dr. Billings and Ms. Roger**

16          Although Plaintiff only briefly references Dr. Billings in her motion for

17    summary judgment, the Court notes that the ALJ's rejection of her opinion ignores

18    the facts of this case and the nature of Plaintiff's severe impairments.  Dr. Billings

19    opined that Plaintiff

20          does appear to have a long history of psychiatric treatment with prior
             hospitalizations.  It can be expected that she will continue to have

21          difficulties due to her bipolar disorder, which appears to have
             intermittent cycling.  These difficulties are an interference in both social

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 12

and employment actions. It is anticipated that she will be unable to maintain any long-term employment.

ECF No. 9-7, Tr. 387.

The ALJ gave minimal weight to this opinion calling it an "equivocal and cursory" assessment. ECF No. 9-2, Tr. 35. Dr. Billings' psychological evaluation is neither equivocal nor cursory, and the ALJ fails to support his cursory assessment of her medical opinion with legitimate justifications. The ALJ stated that Dr. Billings' assessment was inconsistent with Plaintiff's "pursuit of various work activities since her alleged onset date, which have been despite considerable domestic responsibilities," and he cited Plaintiff's work history and times when Plaintiff has presented well. *Id.* Plaintiff's failed attempts to find stable, long-term employment or the fact that she worked prior to her alleged onset date, are not inconsistent with Dr. Billings' finding that Plaintiff would be unable to maintain long-term employment.

The ALJ's errors continued as he selectively cited instances when Plaintiff presented well, with such positive attributes as "appropriate grooming, normal psychomotor activity, cooperative behavior, coherent and directed thought process, fair judgment, stable mood, pleasant affect, and no impairment in her memory or intellectual functioning." *Id.* (citations omitted). In this discussion, and throughout the ALJ's decision, the ALJ ignores the nature of bipolar disorder. As Dr. Billings stated, Plaintiff's symptoms appeared to have intermittent cycling, so the ALJ's selective citations to records of Plaintiff doing well are consistent with

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 13

1   Dr. Billings' opinion.  This is especially true considering the facts regarding

2   Plaintiff's criminal charge, her hospitalizations, her presentation as manic, etc.  *See*

3   *e.g.*, ECF No. 9-8, Tr. 921.

4          Regarding the opinion of Ms. Roger, a licensed clinical social worker who

5   worked extensively with Plaintiff over the course of years, the parties dispute the

6   weight that should be given to this source who is not an "acceptable medical

7   source."  *See* ECF No. 21 at 12.  Regardless of the standard applied, the Court

8   finds that the ALJ's discounting of Ms. Roger's opinion is based at least in part on

9   inadequate justifications similar to those applied to Drs. Johnson and Billings.

10         As the ALJ did throughout his decision, the ALJ vaguely referenced broad

11  facts to demonstrate inconsistencies that are not apparent.  *See e.g.*, ECF No. 9-2,

12  Tr. 37.  For example, the ALJ noted that Ms. Roger opined that Plaintiff could not

13  work full-time due to her bipolar disorder, but the ALJ rejected Ms. Roger's

14  findings of disability, and stated that her relevant statements are "inconsistent with

15  the claimant's work history, activities since her alleged onset date, and longitudinal

16  psychological signs since her alleged onset, which are summarized in the prior

17  discussion of the 'paragraph B' criteria."  *Id*.  This vague justification is neither

18  specific nor legitimate; a recent work history that reflects only short-term

19  positions, at least one of which Plaintiff was fired from, and longitudinal

20  psychological signs such as a hospitalization in 2014 and continued suffering due

21  to bipolar disorder do not conflict with Ms. Roger's opinion.

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 14

The Court also notes that the ALJ gave "significant weight" to the opinions of Drs. Winslow and Borton, who never treated or examined Plaintiff and gave their opinions in October of 2012 and January of 2013, respectively.  Their review of an incomplete record was given greater weight than opinions from providers who had more substantive relationships with Plaintiff.  *See id.* at 25.  These opinions, along with the complete record, need to be re-evaluated using the proper applicable standards upon remand.

## II. Credibility Determination

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).  If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms.  *Reddick*, 157 F.3d at 722.

If the ALJ finds that a claimant's statements are not credible, she need not reject the entirety of a claimant's symptom testimony.  *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on her interpretation of evidence in the record as a whole.  *See id.*  If the credibility findings are supported by substantial evidence in the record, the

1   reviewing court may not second-guess the ALJ's determination.  *See Morgan v.*

2   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  However, an

3   ALJ's failure to articulate specifically "clear and convincing" reasons for rejecting

4   a claimant's subjective complaints is reversible error.  *Orn v. Astrue*, 495 F.3d 625,

5   635 (9th Cir. 2007).

6        In addition to ordinary techniques of credibility evaluation, the ALJ may

7   consider the following factors when weighing the claimant's credibility: the

8   claimant's reputation for truthfulness; inconsistencies either in allegations of

9   limitations or between statements and conduct; daily activities; work record; and

10  testimony from physicians and third parties concerning the nature, severity, and

11  effect of the claimant's alleged symptoms.  *Light v. Social Sec. Admin.*, 119 F.3d

12  789, 792 (9th Cir. 1997).

13       The ALJ summarily dismissed Plaintiff's credibility by first stating that her

14  "statements concerning the debilitating intensity, persistence, and limiting effects

15  of these symptoms are not credible for the reasons explained in this decision."

16  ECF No. 9-2, Tr. 29.  Despite the ALJ's vague reference to an explanation in his

17  decision, he fails to support his reasoning with sufficient particularity.  Instead, the

18  ALJ followed his conclusion by discussing Plaintiff's history in a way that

19  downplays and omits facts that would conflict with the ALJ's decision.  *See id*. at

20  29-34.

21

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 16

1    For example, the ALJ stated that Plaintiff's "records indicate ongoing

2  difficulties with her psychological state, but which have been generally well-

3  controlled with her longstanding psychiatric medication regimen." *Id*. at 31.  The

4  ALJ's conclusion is belied by the record.  Plaintiff voluntarily participated in

5  inpatient treatment for two days in 2013, was arrested after making threats to kill

6  herself and others, was involuntarily hospitalized for more than twelve days in

7  2014, and has struggled with depression and manic states as reflected throughout

8  the record.  The ALJ downplays serious mental health problems as being

9  "moderate limitations with social interactions," and he repeatedly cites notations

10  when Plaintiff presented well and was described as having positive traits such as

11  "appropriate grooming, and normal psychomotor activity."  *See e.g., id*. at 32.

12  Plaintiff's ongoing struggle with mental health is apparent from the record, and the

13  ALJ fails to support his rejection of Plaintiff's credibility with specific, legitimate

14  reasons.

15    The Government has liberally construed the ALJ's discussion of Plaintiff's

16  credibility and has gleaned three reasons that it argues support the ALJ's

17  conclusion.  *See* ECF No. 21 at 6.  The Government argues that "the ALJ

18  discounted Plaintiff's subjective statements because (1) her testimony was

19  inconsistent with the medical evidence; (2) her symptoms improved with

20  treatment; and (3) her testimony was inconsistent with her activities (Tr. 29-34)."

21  *Id*.

1    First, the ALJ's broad discussion did not specify what medical evidence was

2    inconsistent with what testimony.  The ALJ's discussion of normal functions, such

3    as steady gait, normal reflexes, etc., *see e.g.*, ECF No. 9-2, Tr. 30, does not

4    demonstrate that Plaintiff did not experience pain following her successful surgery

5    that would limit her ability to work as stated by Dr. Johnson.  *See* ECF 9-8, Tr.

6    899.  Importantly, this portion of the Government's argument ignores mental

7    health symptoms and focuses only on Plaintiff's physical symptoms.  *See* ECF No.

8    21 at 6-8.

9    The ALJ accurately noted that Plaintiff's symptoms improved with some

10    treatments, but as noted throughout the record, Plaintiff continues to suffer from

11    intermittent episodes of depression, mania, and other mental health symptoms.  For

12    example, Dr. Johnson's treatment notes from April 10, 2014, state "apparently the

13    gabapentin given to her by water's edge did not mix well with her bipolar.  [W]as

14    at the ER last night with a panic disorder – still highly anxious today.  [W]as given

15    some lorazepam in the ER."  ECF No. 9-8, Tr. 853.  The ALJ's discussion of what

16    he deemed "improvement" ignores the episodic nature of bipolar disorder and the

17    continuing nature of Plaintiff's symptoms.

18    As recently as 2014, Plaintiff was involuntarily placed in inpatient

19    psychiatric care after "[s]he became verbally hyperverbal with [sic] not making

20    any sense and was not able to attend to her ADLs.  She also made statements of

21    wanting to kill her sister, boyfriend and herself.  Prior to statements, she was then

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 18

[sic] followed in an altercation at Macy's department store which became

physical." *Id.* at 921. Although the Government may dismiss this episode as a

result of medication non-compliance (although the ALJ noted the conflicting

reports as to whether or not Plaintiff was on her medication at that time, ECF No.

9-2, Tr. 33), if Plaintiff displayed unwillingness or an inability to adhere to her

medication regime due to her mental impairments, then this episode would still be

a result of Plaintiff's struggles with mental disabilities.

The record demonstrates that, consistent with the nature of bipolar disorder,

Plaintiff's symptoms fluctuate, and although she may function well at times, she

struggles with the impairments imposed by her mental illness even while on

medication. *See e.g.*, ECF No. 9-7, Tr. 440-41 (Ms. Rogers wrote that Plaintiff

was "stressed, and tearful, unable to sleep, frustrated with her inability to

concentrate on studies or retain information, and fearful about her economic future

if she cannot succeed," but also found Plaintiff to be compliant with her treatment

and medication at that time.).

The Government's final justification for discounting Plaintiff's credibility is

that the ALJ found Plaintiff's testimony to be inconsistent with her activities. *See*

ECF No. 21 at 9. The Government argues that

> [t]he ALJ reasonably found that, contrary to her testimony, her
> activities "indicate that she is able to tolerate routine social contact, that
> she can maintain a schedule, and that she has been able to persist with
> at least simple tasks" (Tr. 33). She reported that much of her time had
> been devoted to caring for her three children, including taking them to
> frequent appointments (Tr. 33-34, 64-65, 74-75). On a daily basis, she

ORDER REMANDING FOR FURTHER PROCEEDINGS ~ 19

1    would get her children ready for school (Tr. 33-34, 64-66, 71, 384).
2    She performed all of the household chores, including shopping,
     cooking, and cleaning (Tr. 33-34, 65, 292, 384-85).  While her children
3    were at school, she attended at least five hours or [sic] classes per day
     as part of a training program (Tr. 33-34, 64-66).

4    *Id*.

5        The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff

6    has carried on certain daily activities . . . does not in any way detract from her

7    credibility as to her overall disability."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

8    2007).  While it is correct that the "Social Security Act does not require that

9    claimants be utterly incapacitated to be eligible for benefits . . . and many home

10   activities are not easily transferable to . . . the workplace," activities of daily living

11   may be considered "if a claimant is able to spend a substantial part of his day

12   engaged in pursuits involving the performance of physical functions that *are*

13   transferable to a work setting."  *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989)

14   (emphasis in original).  However, a claimant's activities of daily living that require

15   flexibility regarding rest periods or assistance from other persons are generally not

16   transferable to a work environment.  *See Garrison v. Colvin*, 759 F.3d 995, 1016

17   (9th Cir. 2014).

18       The ALJ's third justification lacks legitimacy as the ALJ does not clearly

19   state how Plaintiff's daily activities are inconsistent with her testimony.

20   Furthermore, the fact that Plaintiff is able to get her children ready for school and

21   to complete household chores does not prove that she is not sufficiently disabled

for the purpose of full-time work.  The ALJ's vague justifications for discounting

Plaintiff's credibility are not specific or legitimate, and fall short of providing

"clear and convincing" reasons to discount her testimony.

Based on the Court's findings of error outlined above, the Court need not

rule on Plaintiff's other allegations of error.  The ALJ shall conduct a de novo

review and apply the proper standards to all evidence submitted in this matter.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3.    This case is **REMANDED** for a *de novo* hearing before the Social

Security Administration.

4.    **UPON REMAND**, the ALJ will conduct a *de novo* hearing and issue

a new decision that is consistent with the applicable law set forth in this Order.

The ALJ will, if necessary, further develop the record, reassess the claimant's

residual functional capacity, obtain supplemental evidence from a vocational

expert, and re-evaluate the credibility of the claimant and other opinion evidence.

5.  **JUDGMENT** shall be entered for Plaintiff.

The District Court Clerk is directed to enter this Order and provide copies to

counsel, **enter judgment**, and **close this case**.

**DATED** March 29, 2017.        _s/ Rosanna Malouf Peterson_
                                 ROSANNA MALOUF PETERSON
                                 United States District Judge